**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

     **Plaintiff,**

                                **CASE NO. 6:24-cr-249-CEM-NWH**

**vs.**

**JAMES BERNARD GROVER,**

     **Defendant.**

_____/

**<u>SENTENCING MEMORANDUM</u>**

Defendant, James Bernard Grover, by the undersigned counsel, submits this Sentencing Memorandum summarily addressing the charges, relevant statutory sentencing factors, and key circumstances that are pertinent to this Defendant and this case.  The statutory command the Court is obligated to pursue at the sentencing hearing scheduled for May 28, 2026 is to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing prescribed by 18 U.S.C. § 3553.  This Memorandum is intended to help the Court achieve that objective.

**I.**

**<u>INTRODUCTION</u>**

Mr. Grover was convicted by a jury of one count of Coercion and Enticement of a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422.  Critically,

the jury was unable to reach a verdict on a second count involving similar conduct with a different alleged victim; an unopposed motion for mistrial was granted as to that count.

The Government has recommended a sentence of life imprisonment based upon a calculated offense level of 43. However, this recommendation rests upon enhancements that lack reliable evidentiary support. The obstruction of justice enhancement is based on testimony that the jury disbelieved.  Similarly, the supervisory control, undue influence, vulnerable victim, and pattern of activity enhancements are based on allegations that the jury apparently rejected. These enhancements cannot fairly be used to inflate the guideline range to a level that mandates life imprisonment.

Under 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing.  The statutory minimum of ten years imprisonment is sufficient to accomplish the purposes of sentencing. Mr. Grover is 63 years old with serious medical vulnerabilities, including two heart attacks, cardiac stents, diabetes, respiratory and urinary complications, and multiple medications. He has no prior criminal history. He has devoted nearly four decades to serving vulnerable populations. For such an offender, a ten-year sentence is substantial punishment that accomplishes deterrence,

incapacitation, and just punishment without imposing life imprisonment, a sentence that would be excessive and disproportionate punishment.

The Court should reject the Government's recommendation and impose the statutory minimum sentence of ten years imprisonment, combined with an appropriate term of supervised release with protective conditions. This sentence respects the jury's verdict, accounts for the unreliability of the evidence supporting the enhancements, and complies with the parsimony principle that governs federal sentencing.

## II.

## STATEMENT OF FACTS

### A. The Charges and Conviction

On October 2, 2024, a federal grand jury in the Middle District of Florida returned a one-count Indictment charging Mr. Grover with Coercion and Enticement of a Minor to Engage in Sexual Activity. On January 15, 2025, a two-count Superseding Indictment was returned. Count One charged that on or about May 16, 2023, Mr. Grover knowingly persuaded, induced, enticed, and coerced an individual who had not attained the age of 18 years, identified as C.W., to engage in sexual activity in violation of 18 U.S.C. § 2422. Count Two charged similar conduct with respect to a different minor, identified as C.B., on or about March 9, 2024.

On February 23, 2026, a jury trial commenced before the Honorable Carlos E. Mendoza. After four days of trial, on February 27, 2026, the jury returned a guilty verdict as to Count One. The jury was unable to reach a verdict on Count Two, and an unopposed motion for mistrial was granted as to that count. The Court adjudicated Mr. Grover guilty as to Count One only.

**B.** *The Jury's Mixed Verdict*

The jury's verdict on Count Two is of paramount importance to the sentencing analysis. The jury heard testimony from the same witnesses, was presented with evidence regarding similar conduct with a different victim, and was instructed on the same legal standards. The jury convicted on Count One, but was unable to reach a verdict on Count Two, resulting in a mistrial.

This mixed verdict is probative evidence that the jury had substantial doubt regarding the credibility and reliability of the evidence supporting Count Two. Indeed, it seems likely that the jury disbelieved every Government witness except C.W., the victim identified in Count One. If the victims' testimony was uniformly credible and reliable, the jury would likely have convicted on both counts. The fact that it did not suggests the jury recognized credibility issues and inconsistencies in the testimony of all the Government's witnesses.

As documented in Defendant's objections to the Presentence Investigation Report, the victims' stories evolved and worsened each time they were interviewed

or called upon to report their allegations. The jury's failure to convict on Count Two reflects the jury's recognition of these credibility concerns. This mixed verdict undermines the reliability of the evidence that the Government seeks to use to support the guideline enhancements.

### C. *Mr. Grover's Background and Characteristics*

#### 1. Age and Health

Mr. Grover is 63 years old, having been born on July 7, 1962. At his age, a sentence of life imprisonment is effectively a death sentence. The statutory minimum of ten years would result in Mr. Grover's release at approximately age 73.

Mr. Grover suffers from serious and significant health conditions that substantially impact his life expectancy and quality of life. In January 2020, Mr. Grover suffered a heart attack and underwent surgery to place four stents. In 2021, he was diagnosed with type II diabetes. In December 2024, while incarcerated, he suffered a second heart attack and was taken to Lake Monroe Hospital in Sanford for treatment. He requires frequent follow-up and additional testing.

Mr. Grover also suffers from respiratory problems, urinary issues, and other ailments. He is currently prescribed medication for high blood pressure and takes numerous other medications for heart disease, cholesterol, urination issues, and pulmonary problems. As a result of his heart issues, he experiences shortness of breath with even nominal physical activity.

These serious health vulnerabilities are significant mitigating factors that support a lower sentence. A lengthy prison sentence may substantially reduce Mr. Grover's life expectancy and will subject him to significant physical hardship given his medical conditions.

### 2. Criminal History

Mr. Grover has no prior criminal convictions. He is classified in Criminal History Category I, the lowest category. This complete absence of prior criminal history is a substantial mitigating factor that distinguishes Mr. Grover from defendants who usually appear before the Court.

### 3. Community Service and Charitable Work

For nearly four decades, Mr. Grover dedicated himself to assisting disadvantaged youth, particularly children with autism and other special needs. He founded the Special Needs Advocacy Program in 2010 and served as its executive director until his arrest in September 2024. SNAP provided advocacy and support for individuals with special needs and their families. Prior to founding SNAP, Mr. Grover worked with the University Center for Developmental Disabilities from 1999 until 2010, and he was involved with Autism on the Seas from 2007 until 2011, a program that organized cruise vacations for individuals with autism and their families.

During these nearly four decades of work with vulnerable youth, there is no evidence that anyone ever complained or made any allegation against Mr. Grover until 2024. And there is no evidentiary basis for the Court to conclude he abused anyone other than the alleged victims in this case. This absence of prior complaints, despite Mr. Grover's extensive contact with vulnerable populations, is significant to the sentencing analysis.

### 4. Family and Personal Relationships

Mr. Grover has never been married and has no biological children. However, he became guardian to Dennis Rudd when Dennis was 18 years old. Dennis suffers from autism and a mild intellectual disability. Dennis's parents had passed away before Mr. Grover became involved. Since Mr. Grover's arrest, Dennis, who is now 36 years old, is being cared for by Mr. Grover's stepbrother and a caregiver.

Mr. Grover cared for both of his parents while they were in hospice, demonstrating his commitment to family and his capacity for compassion and care.

### D. *The Presentence Investigation Report and Disputed Enhancements*

The Presentence Investigation Report calculates an offense level of 43, resulting in a guideline range of life imprisonment. This calculation is based upon the following enhancements:

1. Base Offense Level: 28
2. Supervisory Control Enhancement: +2

3. Undue Influence Enhancement: +2

4. Sexual Contact Enhancement: +2

5. Vulnerable Victim Enhancement: +2

6. Obstruction of Justice Enhancement: +2

7. Pattern of Activity Enhancement: +5

Total Offense Level: 43

Mr. Grover disputes virtually all of these enhancements. The defense has filed objections to the Presentence Investigation Report challenging the factual accuracy of numerous paragraphs and the proper application of the Sentencing Guidelines to the facts of this case.

### E. *The Statutory Framework*

The statutory minimum sentence for violation of 18 U.S.C. § 2422(b) is ten years imprisonment. 18 U.S.C. § 2422. The statutory maximum is life imprisonment. 18 U.S.C. § 2422. The Court has discretion to impose any sentence within this range, subject to the requirement that the sentence be sufficient, but not greater than necessary, to accomplish the purposes of sentencing. 18 U.S.C. § 3553.

### III.

### SUMMARY OF ARGUMENT

The Court should impose the statutory minimum sentence of ten years imprisonment for the following reasons:

First, the parsimony principle embodied in 18 U.S.C. § 3553(a) requires individualized sentencing that accounts for Mr. Grover's age, serious medical vulnerabilities, complete absence of prior criminal history, and decades of community service. For a 63-year-old defendant with two prior heart attacks, cardiac stents, diabetes, and respiratory complications, a ten-year sentence represents substantial punishment that will result in his release at age 73, if he survives incarceration.

Second, the guideline enhancements that drive the offense level to 43 lack reliable evidentiary support. The jury's failure to convict on Count Two demonstrates that the evidence supporting similar allegations was not sufficiently credible to achieve unanimity. The obstruction of justice enhancement improperly penalizes Mr. Grover for exercising his constitutional right to testify. The supervisory control, undue influence, vulnerable victim, and pattern of activity enhancements are based on disputed allegations that were either rejected by the jury or never presented at trial.

Third, a ten-year sentence adequately serves all legitimate sentencing purposes. It provides substantial deterrence, both general and specific. It incapacitates Mr. Grover during the period when he would pose the greatest risk. It constitutes just punishment proportionate to the offense and the offender. Combined

with an appropriate term of supervised release with protective conditions, it provides comprehensive protection for the public.

Fourth, the Court's obligation under Federal Rule of Criminal Procedure 32 to resolve disputed facts requires careful scrutiny of the evidence supporting each enhancement. When witness testimony has evolved over time, when the jury has failed to convict on related charges, and when allegations were not presented at trial, the Court should require clear and reliable proof before accepting such allegations as a basis for substantially increasing the sentence.

**IV.**

**ARGUMENT**

**1. THE PARSIMONY PRINCIPLE AND INDIVIDUALIZED SENTENCING UNDER 18 U.S.C. § 3553(a) SUPPORT A SENTENCE AT THE STATUTORY MINIMUM**

Congress has mandated that courts impose sentences sufficient, but not greater than necessary, to comply with the purposes set forth. *See* 18 U.S.C. § 3553. This language embodies the parsimony principle, a foundational requirement that sentences be proportionate and restrained, avoiding unnecessary harshness while still serving legitimate penological goals.

The parsimony principle demands individualized sentencing. Courts must consider the particular circumstances of each offender and offense, recognizing that punishment should be calibrated to fit the offender as well as the crime. A sentence

that fails to account for an offender's age, health, prior record, and other personal circumstances violates this core principle, even if the sentence falls within the statutory range.

### A. *Age and Medical Vulnerability*

Mr. Grover is 63 years old and suffers from serious, documented medical conditions that substantially affect his life expectancy and quality of life. He has experienced two heart attacks, has cardiac stents, suffers from diabetes, and faces respiratory and urinary issues requiring multiple medications. These conditions are not speculative; they are documented medical realities that will worsen with age and imprisonment.

Under 18 U.S.C. § 3553(a)(1), courts must consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553. Mr. Grover's age and medical status are critical characteristics that must weigh heavily in the sentencing calculus. A 63-year-old with significant cardiac history, diabetes, and respiratory complications faces substantially different consequences from a younger, healthier offender serving the same sentence. For such an individual, a ten-year sentence represents severe punishment, potentially a substantial portion of his remaining life expectancy.

**B.** *Absence of Prior Criminal History*

Mr. Grover has Criminal History Category I with zero prior convictions. This absence of criminal history is a powerful mitigating factor. *See* 18 U.S.C. § 3553. An offender with no prior convictions demonstrates a lifetime of lawful conduct before the present offense. This history suggests lower risk of recidivism and indicates that Mr. Grover is not a career criminal requiring lengthy incapacitation.

**C.** *Community Service and Positive Contributions*

Mr. Grover has a long history of community service working with special-needs families. This demonstrates prosocial values, commitment to helping vulnerable populations, and positive contributions to his community. Such a history reflects favorably on his character and suggests that he is capable of rehabilitation and continued positive engagement with society.

**D.** *Ten Years Is Severe Punishment That Adequately Serves Sentencing Purposes*

A ten-year sentence is severe in absolute terms, but it is particularly severe for a 63-year-old with Mr. Grover's medical profile. At age 63, with documented cardiac disease, diabetes, and respiratory complications, a ten-year sentence may represent a substantial portion of his remaining life. The combination of his age and health conditions means that imprisonment carries heightened risks of serious medical deterioration or death.

The statutory minimum of ten years is not a lenient sentence. It represents a decade of incarceration, a substantial deprivation of liberty that will profoundly impact Mr. Grover's remaining years. For an offender of Mr. Grover's age and health status, this sentence is severe enough to accomplish legitimate sentencing purposes without requiring a life sentence or a sentence approaching life.

### (i) Deterrence

The deterrence purpose of sentencing is satisfied by a substantial prison sentence. 18 U.S.C. § 3553. A ten-year sentence provides powerful general deterrence; it communicates to the public that federal crimes of this nature carry serious consequences. For Mr. Grover specifically, a ten-year sentence provides specific deterrence; the prospect of a decade in prison is a substantial deterrent to future criminal conduct.

### (ii) Incapacitation

Incapacitation is adequately served by a ten-year sentence. Mr. Grover's age, health status, and lack of prior criminal history suggest he poses a lower risk of future criminal conduct than a younger offender with an extensive criminal history. A ten-year sentence removes him from society for a substantial period, protecting the public during his most active years and during the period when he would pose the greatest risk.

Moreover, Mr. Grover's medical vulnerabilities mean that his capacity to commit crimes will diminish over time. By the time he completes a ten-year sentence, he will be 73 years old with further medical deterioration. The incapacitative effect of a ten-year sentence is substantial and adequate.

### E. *Supervised Release as a Protective Mechanism*

The Court must impose a term of supervised release of at least five years. 18 U.S.C. § 3553.  The defense does not dispute this requirement. However, the Court has discretion to impose a longer term of supervised release, and such conditions can effectively protect the public without requiring an extended prison term.

Supervised release with appropriate conditions, including restrictions on contact with minors, participation in treatment programs, and regular monitoring, can adequately protect the public. These conditions can be tailored to address the specific risks posed by Mr. Grover's offense while allowing him to serve a substantial portion of his sentence in the community under supervision, rather than in prison.

A substantial term of supervised release, combined with a ten-year prison sentence, provides comprehensive protection for the public. The prison term ensures incapacitation during the period of greatest risk, while supervised release extends protective oversight into Mr. Grover's later years when his medical condition will further limit his capacity to pose a threat.

## 2. THE GUIDELINE ENHANCEMENTS LACK RELIABLE EVIDENTIARY SUPPORT AND SHOULD BE REJECTED OR SUBSTANTIALLY LIMITED

The Presentence Investigation Report calculates an offense level of 43 based on multiple enhancements that lack reliable evidentiary support. The Court's obligation under Federal Rule of Criminal Procedure 32 to resolve disputed facts requires careful scrutiny of the evidence supporting each enhancement. *See* Fed. R. Crim. P. 32.

"When a defendant challenges one of the factual bases of his sentence …the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence,* 47 F.3d 1559, 1566 (11th Cir.1995). "It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." *Id.; United States v. Rodriguez,* 732 F.3d 1299, 1305 (11th Cir. 2013). The sentencing court must ensure that facts supporting guideline enhancements are established with sufficient indicia of reliability. *See* U.S.S.G. § 6A1.3.

### A. *The Mixed Jury Verdict Demonstrates Unreliability of Enhancement Evidence*

The jury's inability to reach a verdict on Count Two is concrete evidence that at least some allegations were not proven to the jury's satisfaction. While a mistrial on Count Two is not an acquittal, it demonstrates that the evidence supporting certain

conduct was not sufficiently clear or convincing to achieve unanimity among the jurors.

This mixed verdict carries significant weight at sentencing. If the jury could not unanimously agree that the conduct underlying Count Two was proven beyond a reasonable doubt, the sentencing court should exercise caution before accepting related allegations at the lower preponderance-of-the-evidence standard. The jury's inability to reach consensus suggests that the evidence was contested, ambiguous, or subject to reasonable disagreement, precisely the circumstances that warrant skepticism at sentencing.

As shown at trial, the victims' stories evolved and worsened each time they were interviewed. When witness testimony evolves or shifts between different proceedings, the reliability of that testimony for sentencing purposes becomes questionable. The sentencing court should be particularly cautious about relying on such testimony to support enhancements that substantially increase the guideline range.

## B. *The Obstruction of Justice Enhancement Improperly Penalizes the Exercise of Constitutional Rights*

The Presentence Investigation Report applies a two-level obstruction enhancement based on Mr. Grover's testimony that he never sexually abused any

minor. *See* U.S.S.G. § 3C1.1. However, this enhancement is legally and constitutionally problematic.

The obstruction enhancement requires a finding of willful obstruction of justice. *See* U.S.S.G. § 3C1.1. When the basis for the enhancement is alleged perjury, the Court must make specific findings that the defendant's testimony was willfully false and material, not merely that a jury convicted the defendant on related charges. *See* U.S.S.G. § 3C1.1.  In *U.S. v. Dunnigan*, 507 U.S. 87 (1993), the Supreme Court explained that "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury," noting that not all testimony that is inaccurate is perjurious. *Dunnigan*, 507 U.S. at 95; .*United States v. Stahlman*, 934 F.3d 1199, 1227 (11th Cir. 2019) (when a defendant objects to an obstruction enhancement resulting from his trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same).

A jury verdict of guilty does not automatically establish that testimony given at trial was perjurious. The distinction is critical: a jury's finding of guilt on the underlying charge addresses whether the defendant committed the crime charged, not whether the defendant's trial testimony was deliberately false. The Court must independently determine whether the defendant knowingly and willfully gave false testimony that was material to the proceedings.

Applying an obstruction enhancement automatically whenever a defendant exercises the right to testify and is subsequently convicted improperly penalizes the exercise of fundamental constitutional rights. The defendant's right to testify in his own defense is a constitutional guarantee, and the right to trial itself is foundational to the criminal justice system. *See Commentary,* U.S.S.G. § 3C1.1

The commentary to § 3C1.1 of the Sentencing Guidelines recognizes this concern, cautioning that the enhancement should not be used to punish the exercise of constitutional rights and acknowledging that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory. *See Commentary,* U.S.S.G. § 3C1.1. When a defendant chooses to testify, he necessarily risks that a jury may disbelieve him or find his testimony insufficient. To transform every conviction following defendant testimony into an obstruction enhancement would effectively penalize the decision to exercise trial rights, a result contrary to constitutional principles. The Court should decline to apply the obstruction enhancement or, at minimum, make explicit findings addressing each element of willful, material false testimony and specifically addressing whether the testimony was the product of confusion, mistake, or faulty memory.

## C. *The Supervisory Control Enhancement Is Unsupported*

The Presentence Investigation Report applies a two-level enhancement under § 2G1.3 based on the assertion that C.W. was in Mr. Grover's supervisory control.

However, Mr. Grover was not a licensed counselor or therapist, a fact repeatedly emphasized by the Government. The counseling was informal mentoring provided through SNAP. The question is whether this informal mentoring relationship constitutes supervisory control within the meaning of the guideline.

The guideline contemplates situations like teachers, day care providers, and babysitters, individuals with formal supervisory authority over minors. *Cf.* (§ 2G1.3(b)(1) providing for an enhancement when the defendant was a parent, relative, or legal guardian of the minor; or the minor was otherwise in the custody, care, or supervisory control of the defendant). Mr. Grover's relationship with C.W., while involving mentoring, does not rise to the level of supervisory control. Mr. Grover did not have formal supervisory authority over C.W.; rather, C.W. and his mother voluntarily sought out Mr. Grover's mentoring. The Court should decline to apply this enhancement or require the Government to establish with reliable evidence that the informal mentoring relationship constituted supervisory control within the meaning of the guideline.

### D. *The Undue Influence Enhancement Rests on a Rebuttable Presumption*

The Presentence Investigation Report applies a two-level enhancement under § 2G1.3 based on undue influence. The guideline establishes a rebuttable presumption of undue influence when a participant is at least ten years older than the

minor. *See Application Note* 3(b) to U.S.S.G. § 2G1.3. However, this is a rebuttable presumption, not an absolute rule.

Mr. Grover has rebutted the presumption by demonstrating that the age difference alone does not constitute undue influence in the sense of coercion or manipulation beyond what the age difference itself provides. The evidence of manipulation is limited. The texts between Mr. Grover and C.W. do not demonstrate undue influence in the sense of coercion or manipulation. The Court should carefully scrutinize whether the presumption has been rebutted and whether there is additional evidence of manipulation beyond the age difference. *See* U.S.S.G. § 2G1.3(b)(2)(B).

### E. *The Vulnerable Victim Enhancement Lacks Proof*

The Presentence Investigation Report applies a two-level enhancement under § 3A1.1 based on C.W.'s alleged autism. However, it was not proven at trial that C.W. was autistic. Indeed, the Government did not present any expert testimony or medical evidence of any kind regarding. C.W.'s alleged autism.

Section 3A1.1 contemplates situations where the victim's condition makes them particularly susceptible to the criminal conduct. If C.W.'s autism was not proven, or if it is low-level autism that does not render C.W. unusually vulnerable, the enhancement should not apply. In fact, in order for the enhancement under § 3A1.1 to apply, it must be shown that Mr. Grover "knew or should have known" that

C.W. was a "vulnerable victim." *See* U.S.S.G. § 3A1.1(b)(1). The testimony at trial showed that Defendant and C.W. interacted at SNAP events and other occasions in a normal manner and not in a manner designed to deal with C.W. as though he had any special need.

Therefore, the Court should decline to apply this enhancement because C.W.'s autism was not proven at trial. Alternatively, before applying an enhancement under U.S.S.G. § 3A1.1(b)(1), the Court should require the Government to establish with reliable evidence that C.W. was unusually vulnerable due to a proven mental condition.

### F. *The Pattern of Activity Enhancement Is Based on Unreliable Evidence*

The Presentence Investigation Report applies a five-level enhancement based on a pattern of activity involving prohibited sexual conduct. This enhancement is based on conduct with C.B., J.O., and T.W. However, the jury did not convict on Count Two involving C.B., and the conduct with J.O. and T.W. was not charged in the indictment.

The jury's failure to convict on Count Two proves the evidence regarding C.B. is unreliable. While acquitted conduct may be considered in sentencing, the jury's failure to convict is highly probative of the reliability of the evidence. If the jury did not believe C.B.'s testimony, it should not be used to establish a pattern of activity.

The conduct with J.O. and T.W. was not charged in the indictment. Under the relevant conduct guideline, such conduct must be part of the same course of conduct or common scheme or plan as the offense of conviction. *See* U.S.S.G. § 1B1.3. The question is whether conduct with different victims on different occasions, with different circumstances, constitutes a common scheme or plan.

For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor. *United States v. Siegelman,* 786 F.3d 1322 (11th Cir. 2015). A court must consider whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind.

The conduct with different victims on different occasions, while sharing some similarities, is not sufficiently connected to constitute a single scheme or plan. The conduct with each victim was separate and distinct. The Court should carefully scrutinize whether the Government has established by reliable evidence that the conduct constitutes a pattern within the meaning of the guideline.

Moreover, the defense has documented that the victims' stories evolved and worsened each time they were interviewed. This suggests the evidence is not reliable and should not be used as a basis for a substantial enhancement. The absence of any

prior complaints during Mr. Grover's nearly four decades of work with special needs youths further undermines the reliability of the pattern enhancement.

## III. THE COURT SHOULD IMPOSE A SENTENCE AT THE STATUTORY MINIMUM OF TEN YEARS

The Court should impose a sentence at the statutory minimum of ten years imprisonment. This sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing. 18 U.S.C. § 3553.

A ten-year sentence:

1. Reflects the seriousness of the offense and provides just punishment proportionate to Mr. Grover's conduct and characteristics.

2. Provides adequate deterrence, both general and specific.

3. Protects the public through incapacitation during the period of greatest risk.

4. Accounts for Mr. Grover's age, serious medical vulnerabilities, complete absence of prior criminal history, and decades of community service.

5. Respects the jury's mixed verdict and the unreliability of the evidence supporting the guideline enhancements.

6. Avoids the excessive and disproportionate punishment of life imprisonment for a 63-year-old defendant with serious health conditions and no prior criminal record.

Combined with an appropriate term of supervised release with protective conditions, including restrictions on contact with minors, participation in sex offender treatment programs, and regular monitoring, a ten-year sentence provides comprehensive protection for the public while respecting the constitutional principles that govern federal sentencing.

## V.

## CONCLUSION

For the foregoing reasons, Mr. Grover respectfully requests that this Court:

1.      Reject or substantially limit the guideline enhancements that lack reliable evidentiary support, particularly the obstruction of justice, supervisory control, undue influence, vulnerable victim, and pattern of activity enhancements.

2.      Recognize that the jury's failure to convict on Count Two demonstrates the unreliability of the evidence supporting those allegations and decline to rely on such evidence at sentencing.

3.      Impose a sentence at the statutory minimum of ten years imprisonment, which is sufficient, but not greater than necessary, to accomplish the purposes of sentencing. 18 U.S.C. § 3553.

4.      Impose a term of supervised release of not less than five years, with appropriate conditions including restrictions on contact with minors, participation in sex offender treatment programs, and regular monitoring to protect the public.

5.      Consider Mr. Grover's age of 63 years, serious medical vulnerabilities including prior heart attacks, cardiac stents, diabetes, respiratory and urinary complications, complete absence of prior criminal history, and decades of service to vulnerable populations as substantial mitigating factors that support a sentence at the statutory minimum.

6.      Reject the Government's recommendation for life imprisonment as excessive, disproportionate, and inconsistent with the principles of individualized sentencing and the parsimony principle that govern federal sentencing.

In sum, a sentence of ten years imprisonment, combined with appropriate supervised release conditions, will accomplish all legitimate sentencing purposes while respecting Mr. Grover's individual characteristics and the constitutional principles that require sentences to be proportionate to the offense and the offender.

/s/Charles M. Greene
Charles M. Greene
Florida Bar No.  938963
Charles M. Greene, P.A.
55 East Pine Street
Orlando, Florida 32801
Telephone (407) 648-1700
Facsimile (407) 648-0071
E-Mail: cmg@cmgpa.com

*Counsel for Defendant James Bernard Grover*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 22, 2026, the foregoing Sentencing Memorandum was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Diane S. Hu
Assistant United States Attorney
400 West Washington Street, Suite 3100
Orlando, Florida 32801
diane.hu@usdoj.gov

Jennifer Trittipo
Senior United States Probation Officer
Middle District of Florida
400 West Washington Street, Suite 1400
Orlando, Florida 32801
jennifer_trittipo@flmp.uscourts.gov

/s/Charles M. Greene
Charles M. Greene